## WM. B. PROBASCO *v.* BROOKS JOHNSON ET AL.

### (No. 7,937.)

1. No equitable lien exists in Ohio, upon real estate, by the deposit of title
deed, although accompanied with the declaration by parol of such a pur-
pose for which the deposit was made.
2. In England and elsewhere, when such an equity is recognized, it exists
only when an advance is made upon the faith of the deposit; never to
secure a precedent debt, or to create a trust by which a lien could enure
to the benefit of prior creditors.

SPECIAL TERM.—On demurrer to petition.

The plaintiff claims to subject certain real estate in the
city of Cincinnati, to the satisfaction of certain debts due
by the defendants to him, individually, and as trustee for
other parties. He sets up a lien upon the property, which
he asks to be enforced, and that a sale may be decreed, for
the benefit of all interested in the common fund.

His lien, as he avers in his petition, arises on the deposit,
by the defendants of their title deed to the property, accom-
panied with the declaration, by parol, of the purpose for

which the debtors made the deposit with the plaintiff. No evidence, in writing, of the existence of the lien, or its original creation, is claimed. The defendants demur.

*W. B. Probasco & Durbin Ward*, for plaintiff.

*Smith & Lowe*, for defendants.

STORER, J. The question meets us at the threshold of this case, whether any valid lien exists which can be enforced by decree.

The rights of the plaintiff, and those whom he represents, depend solely upon the deposit of the title deed to the land sought to be subjected, accompanied by the parol agreement that it was thereby intended a lien should be created.

Equitable mortgages by the deposit of title deeds, have been, for more than a century, held to be valid in the English courts.

The first case we find in the books is reported in 2 Vernon, 618, *Hales* v. *Van Berchem*, where Lord Chancellor Cowper held the doctrine rather vaguely; but in *Russel* v. *Russel*, 1 Brown's Ch'y Cases, 269, Lord Loughborough directed that the pledge of a lease should be carried into effect. " It is," said he, " a delivery of the title to the plaintiff for a valuable consideration. The court has nothing to do but to supply the legal formalities; in all these cases, the contract is not *to be* performed, but is executed."

The rule thus stated has become the settled law in England, and, though it has often been doubted and restricted, no chancellor has held that it did not exist.

Lord Eldon, in *ex parte Coming*, 9 Vesey, 117, doubted the propriety of the doctrine, tending, as it necessarily did, to repeal, virtually, the statute of frauds; but the policy of the law, as expounded by the English courts, has been to give efficacy to all such liens; so that it would seem, at this day, the point is " *res adjudicata*."

We must not forget, however, the reason on which the English rule is founded.

The possession of the title deeds, in England, is evidence of ownership, as no one is supposed to have the right to retain them, unless he had a legal or equitable claim to the estate they conveyed. Hence it is that the original transfers of title, whether by grant or deed, pass to the alienee, when the property is sold; and their examination by the solicitor of the parties is a prerequisite to every sale. This arises from the fact that, except in the counties of Middlesex and York, there are no registries, where search can be made to ascertain the titles to lands, with the exception of copy-hold titles, which are always to be found recorded in the manor courts. The only security which the purchaser, consequently, has, for the validity of any title in his grantor, is the exhibition of the deeds which establish it.

In the United States, the reason of the rule does not exist. Our system of registry dispenses with the necessity of any exhibition of title deeds, and supplies all the evidence to protect both vendor and vendee. It furnishes at once a true statement of the present condition of all legal rights to land, and if the original conveyance is ever lost or destroyed, a copy from the record is received as an equivalent.

We might, therefore, ask the question whether the English rule can be allowed under our system of jurisprudence.

We have examined all the cases that we could find where the subject has been referred to, and are satisfied the weight of authority, as is certainly the reason of the rule, is against the English decisions.

Mr. Greenleaf, in his note to Cruise, vol. 2, sec. 20, says: "No case is found in the United States in which the doctrine has been actually administered, though in several cases it has been adverted to;" and Chancellor Kent speaks with much hesitation as to the introduction of the rule, 4 Comm. 150, 151. 2 John. Ch. 603, *Berry* v. *Mut. Ins. Co.* So, also, does Judge Story express his opinion, 2 Eq. Jur. sec. 1,020.

Yet there have been several adjudications in our sister States, all of which we have examined. The assistant vice chancellor of New York, in 2 Sandf. Ch. 10, *Rockwell* v. *Hobby*, applied the rule, without any exception, making no distinction between the condition of the landholder in England and in this country, which, it seems to us, is in direct contravention of the reasoning in 2 John. Ch. 603, already referred to, where Chancellor Kent intimated very clearly what his opinion would be if the point was directly before him.

In 10 Smeades and Marshall, 426, *Williams* v. *Stratton*, Judge Sharkey held that an equitable mortgage might be made by the deposit of the title deeds ; but, he remarked, all the title deeds must be left at the time. " Such equitable liens," he said, " have met with very decided opposition in England; but it is admitted, on all hands, that they should not be extended beyond their present limit; they are in direct opposition to the statute of frauds, in regard to which we will create no exceptions."

We have a reference to the case of *Welsh* v. *Usher*, 2 Hill's Ch. [S. Car.] 166, where it is said the doctrine was recognized; but we can not find the report, and are not able, therefore, to state what was actually decided.

On the other hand, the rule is expressly denied in 3 Penrose & Watts, 239, *Bowers* v. *Oyster*, and 3 Barr, 233, *Shitz* v. *Dieffenbach*.

The court of appeals of Kentucky, in 8 B. Munroe, 437, *Vanmeter* v. *McFaddin*, in a very decided manner rejected the English rule, as contrary to the spirit of the registry act, and effectually annulling the statute of frauds.

A review of the cases has fully satisfied us that there is no necessity, in this State, for the recognition of the principle to which we have alluded; that it is founded, moreover, if it should be applied, upon no sound reason ; but, on the contrary, no rule that is consistent with our legal policy can sanction it.

It would be impossible to carry out the doctrine, as it is

required in England, as the grantor here seldom, if ever, could deposit all the title deeds, never having had them in possession, or under his control.

When we refer to the registry of deeds, we may well use the language of Chancellor Kent, in case of *Berry v. Mutual Insurance Company*, 609, already quoted, that the record of the deed is " a beneficial substitute for deposit of. the deed, and gave better and more effectual security to subsequent mortgagees."

We hold, therefore, that no equitable lien exists in Ohio, upon real estate, by the mere deposit of title deeds.

In England, however, and in New York, as well as in Mississippi, where the equitable right is said to be thus created, it exists only when an advance is made, upon the faith of the deposit, never to secure a precedent debt, or to create a trust by which a lien would enure to prior creditors.

The case before us is not, therefore, within the reason of the English doctrine, and would not be sustained at common law.

The deposit was made for the benefit of creditors, when claims already existed, and no new consideration passed, for the indemnity intended, it is said, to be given thereby.

On any principle involved in the case, we are satisfied we must sustain the demurrer and give judgment for the defendants.

Demurrer sustained and judgment for defendants.